```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
AMRITPAL SINGH,                                                 :
                                                                :
                              Plaintiff,                        :      15-CV-1411 (JMF)
                                                                :
              -v-                                               :      OPINION AND ORDER
                                                                :
UNITED STATES CITIZENSHIP AND                                   :
IMMIGRATION SERVICES, et al.,                                   :
                                                                :
                              Defendants.                       :
                                                                :
----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/30/2016

JESSE M. FURMAN, United States District Judge:

Plaintiff Amritpal Singh, an Indian national subject to an order of removal from the United States, sues the United States Citizenship and Immigration Services ("USCIS") and the District Director of USCIS (together, "Defendants"), challenging their decisions to deny his application for adjustment of status to lawful permanent residency. Now pending are cross-motions for summary judgment. The Court, however, concludes that it lacks subject-matter jurisdiction because Singh's suit amounts to an indirect challenge to the order of removal and, under the REAL ID Act of 2005, 8 U.S.C. § 1252(a)(5), jurisdiction over such challenges lies exclusively in the Court of Appeals. Accordingly, and for the reasons explained below, the parties' motions for summary judgment are denied and the Complaint is dismissed.

## BACKGROUND

The pertinent facts are somewhat convoluted but not in dispute. Singh, a native and citizen of India, entered the United States without inspection in 1995. (*See* Administrative Record ("AR") 161, 529, 651). In November 1995, pursuant to former Section 241(a)(1)(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1231(a)(1)(B) (1994), the Immigration

and Naturalization Service ("INS") commenced deportation proceedings against Singh, and ordered him to appear before an immigration judge ("IJ") in San Francisco, California, to show cause why he should not be deported. (AR 529-33). At the hearing, Singh admitted the underlying allegations and a merits hearing was scheduled for March 21, 1996. (Decl. Brandon M. Waterman (Docket No. 24) ("Waterman Decl."), Ex. 1, at 26-27; AR 617). Although Singh's counsel appeared at the merits hearing, Singh himself failed to appear, and the IJ ordered him deported *in absentia*. (AR 588, 646). Singh remained in the United States, however. He married a United States citizen and, in 2005, filed an application for adjustment of status on that basis. (*See id.* at 327-28). At the interview with respect to his application, Singh was placed in custody pursuant to the 1996 deportation order. (*Id.*). Singh filed a motion to rescind and reopen the deportation order, claiming he had never received notice of the March 1996 hearing. (*Id.* at 328). The IJ denied that motion, Singh appealed, and the Board of Immigration Appeals ("BIA") affirmed the IJ's denial in January 2007. (Waterman Decl., Ex. 1, at 25).

Shortly thereafter, on February 12, 2007, Singh filed a petition for review, and an accompanying motion to stay deportation, in the United States Court of Appeals for the Ninth Circuit. (*See id.* at 406-07). The Ninth Circuit temporarily stayed Singh's deportation that same day (*see id.* at 407), but several hours later, the Government mistakenly deported Singh to India in contravention of the stay (*id.* at 595). As a remedy for that mistake, Singh was permitted to return to the United States and temporarily paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A), (*id.* at 571, 582-86), which authorizes the Attorney General to parole "any alien applying for admission to the United States" for reasons of "significant public benefit."

Upon his return, Singh argued before the Ninth Circuit that his improper deportation had rendered his 2007 petition for review moot. (*See* Waterman Decl., Ex. 1, at 12-14). Specifically,

Singh argued that "[o]n February 12, 2007, deportation proceedings terminated automatically in this case as a result of [Singh's] departure from the United States, thereby depriving the IJ with jurisdiction over petitioner's 2005 application for adjustment of status." (*Id.* at 13). In an unpublished memorandum decision dated September 18, 2012, the Ninth Circuit rejected that argument. *Singh v. Holder*, 483 F. App'x 350 (9th Cir. 2012). The February 2007 deportation did not terminate Singh's deportation proceedings pursuant to 8 C.F.R. §§ 245.1(c)(8)(ii)(A), 245.2(a)(1), the Court explained, "because the government's admittedly erroneous deportation of Singh did not constitute a 'departure' within the meaning of the immigration laws." *Singh*, 483 F. App'x at 350 (citing *Salgado-Diaz v. Gonzales,* 395 F.3d 1158, 1164 (9th Cir. 2005)). On the merits, the Court denied Singh's due process challenge to the administrative denial of his motion to rescind and reopen. *Id.*

In October 2013, Singh filed another motion to reopen his deportation proceedings with the BIA so that he could adjust his status to that of a lawful permanent resident based on his marriage to a U.S. citizen. (*See* Compl. (Docket No. 1) ¶ 24; Government's Mem. Law Supp. Cross-Mot. Summ. J. (Docket No. 23) ("Defs.' Mem.") 5). In December 2013, the BIA denied that motion. (*See* Defs.' Mem. 5). Thereafter, Singh filed another petition for review and motion for a temporary stay of deportation before the Ninth Circuit. A temporary stay is currently in effect; although the Government moved for summary disposition and the matter was fully briefed in July 2015, the petition for review appears to still be pending at this time. *See Singh v. Lynch*, 9th Cir. Docket No. 13-74456. (*See also* Defs.' Mem. 5).

The present lawsuit arises from a separate set of legal maneuvers by Singh. On October 5, 2007 — while his initial petition for review to the Ninth Circuit was pending — Singh separately applied to USCIS for an adjustment of status, also on the basis of his marriage to a

3

U.S. citizen.  (Compl. ¶ 19).  On April 6, 2009, USCIS issued a decision, signed by the District Director for New York, denying Singh's application on the ground that jurisdiction over the application resided not with USCIS, but with the immigration judge whose decision was, at that time, on review before the Ninth Circuit.  (*Id.* ¶ 20; *see id.*, Ex. A).  The decision noted that "[a]lthough the [Ninth Circuit] granted you a stay of deportation, it did not change the jurisdiction of your case."  (*Id.*, Ex. A, at 2).  On May 8, 2009, Singh filed a motion for reconsideration, which USCIS's Acting District Director for New York denied in a decision dated August 8, 2013.  (*Id.* ¶¶ 21, 23; *see id.*, Ex. B).  That decision advised Singh that, because the Ninth Circuit had held his "erroneous removal by DHS was not considered a departure," he was "under an order of deportation and therefore, USCIS still does not have jurisdiction over [his] application."  (*Id.*, Ex. B, at 2).

On February 23, 2015, Singh filed this action, invoking the judicial review of final agency action afforded by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).  Singh asks the Court to hold unlawful and set aside USCIS's decisions, thereby allowing him to pursue his application for adjustment of status before USCIS.  More specifically, Singh argues that he qualifies as an "arriving alien" within the meaning of the applicable regulations given his admission into the United States in 2007 as a parolee and that, as an "arriving alien," USCIS — rather than the IJ — had exclusive jurisdiction over his application for adjustment.  *Compare* 8 C.F.R. § 1245.2(a)(i) (proving that IJs have "exclusive jurisdiction" over any application for adjustment of status by "any alien who has been placed in . . . removal proceedings . . . (*other than as an arriving alien*)" (emphasis added)), *with id.* § 1245.2(a)(ii) (providing, with one exception not relevant here, that IJs lack jurisdiction over any application of "an *arriving* alien who is placed in removal proceedings" (emphasis added)); *see also id.* § 245.2(a)(1) ("USCIS

4

has jurisdiction to adjudicate an application for adjustment of status filed by any alien, *unless* the immigration judge has jurisdiction to adjudicate the application." (emphasis added)); *id.* § 1245.2(a) (similar).  (Pl.'s Br. Supp. Mot. Summ. J. (Docket No. 16) ("Pl.'s Mem.") 5 (citing *In re Oseiwusu*, 22 I&N Dec. 19, 19-20 (BIA 1998)).

## DISCUSSION

Before reaching the merits of Singh's argument and addressing whether USCIS had jurisdiction to address his application for adjustment, the Court must address the question of whether it has jurisdiction over this suit.  *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").[1]  Singh premises jurisdiction on the APA.  By its terms, however, the APA does not apply "to the extent that . . . statutes preclude judicial review," 5 U.S.C. § 701(a)(1), and various provisions of the INA preclude, or restrict, judicial review of immigration decisions.  Most relevant here, Section 1252(a)(5) — enacted in 2005, but applicable retroactively, *see* REAL ID Act § 106(a), 119 Stat. at 310; *see also, e.g.*, *Gittens v. Menifee*, 428 F.3d 382, 384-85 (2d Cir. 2005) — provides, in relevant part, that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. § 1252(a)(5).[2]  The Second Circuit has held that "judicial review of an order

---

[1]   By Order entered February 2, 2016, the Court expressed "significant doubt that it has subject-matter jurisdiction," and invited the parties to submit supplemental letter briefs addressing the issue, which had not been raised in either party's papers.  (Docket No. 31).  The parties each submitted two supplemental letter briefs.  (Docket Nos. 32-34, 36).

[2]   Additionally, Section 1252(a)(9) provides, in relevant part, that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a

5

of removal" encompasses judicial review not only of "a direct challenge to a removal order" but also of an "indirect[] challeng[e]." *Delgado v. Quarantillo*, 643 F.3d 52, 55-56 (2d Cir. 2011).

In *Delgado*, the plaintiff had already been removed from the country once and reentered without inspection. *See id.* at 53. Several years later, she married a U.S. citizen and sought permanent resident status; in connection with that effort, she filed a Form I-212, which, if granted, waives the inadmissibility of a previously removed alien and permits him or her to apply for adjustment of status. *See id.* at 53-54 & n.1. USCIS denied Delgado's I-212 request and her application for adjustment of status and reinstated the order of removal against her. *See id.* at 54. After unsuccessfully appealing the removal order to the Second Circuit, Delgado brought a mandamus action in the district court "to compel USCIS to make a determination on the merits of her I-212 application, alleging that USCIS denied her application in violation of the [APA]." *Id.* Holding that Section 1252(a)(5)'s "jurisdictional bar applies equally to preclude an indirect challenge" to an order of removal, and that whether a plaintiff is bringing an indirect challenge turns "on the substance of the relief" sought, the Second Circuit concluded that the district court lacked jurisdiction to hear Delgado's case. The Court did so despite acknowledging that granting an I-212 waiver "would not per se prevent [Delgado's] removal." *Id.* (internal quotation marks omitted). "Obtaining such a waiver," the Court reasoned, was "a necessary prerequisite to her ultimate goal of adjustment of status. . . . [A]n 'adjustment-of-status challenge is inextricably linked to the reinstatement of [an alien's] removal order,' because 'a *nunc pro tunc* Form I-212 waiver of inadmissibility and the adjustment of status to that of [a lawful permanent

---

final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any other provision of law (statutory or nonstatutory), to review such an order or such questions or law or fact."

resident]' would render the reinstatement order 'invalid.'" *Id.* (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.,* 600 F.3d 1076, 1082-83 (9th Cir. 2010)).

Following *Delgado*, district courts in this Circuit have applied Section 1252(a)(5)'s jurisdictional bar to a range of suits where, as here, the plaintiffs were subject to orders of removal. *See, e.g.*, *Ferdous v. Johnson*, No. 15-CV-0122 (MKB), 2015 WL 9581815, at *5 (E.D.N.Y. Dec. 30, 2015); *Xiao Cong Hu v. Holder*, No. 11-CV-4747 (FB), 2012 WL 2619185, at *1 (E.D.N.Y. June 25, 2012); *Bici v. Napolitano*, No. 10-CV-1991 (AWT), 2012 WL 642781, at *2 (D. Conn. Feb. 28, 2012); *Nieto-Ayala v. Holder*, No. 08-CV-8347 (LMM), 2011 WL 3918156, at *3 (S.D.N.Y. Aug. 30, 2011); *see also Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013) (affirming dismissal for lack of subject-matter jurisdiction of the plaintiff's APA challenge to USCIS's denial of his application for a waiver of inadmissibility). *Nieto-Ayala*, for example, involved an application "to compel the Government to continue [the plaintiff's] enlargement on bond until USCIS adjudicate[d] his application for asylum." 2011 WL 3918156, at *2. The Court acknowledged that, unlike the plaintiff in *Delgado*, Nieto-Ayala was not "seek[ing] to compel USCIS to act." *Id.* at *3. Nevertheless, the Court concluded that if it were to grant the relief sought, "the Government would be without a mechanism to enforce the removal order until USCIS has adjudicated [the plaintiff's] asylum application. Thus, the effect of any stay by this Court would be to prompt USCIS to adjudicate Nieto-Ayala's asylum application, and like the I-212 application in *Delgado,* Nieto-Ayala's asylum application is 'inextricably linked' to his removal order because if the asylum application is granted, then his removal order would be invalid." *Id.* (quoting *Delgado*, 643 F.3d at 55).

Singh concedes, as he must, that these district court cases, if followed, would compel dismissal of his complaint for lack of subject-matter jurisdiction. (Pl.'s Feb. 11, 2016 Ltr.

7

(Docket No. 33) ("Pl.'s Ltr.") 3 n.1). He argues for a different result, however, on the ground that the district courts have construed the holding in *Delgado* too broadly. In particular, he contends that relief is "inextricably linked" to a removal order — as that phrase is used in *Delgado* and *Morales-Izquierdo* (the Ninth Circuit decision followed by the *Delgado* Court) — "only if the order itself bars that relief." (*Id.* at 2). He derives that limitation from the fact that *Delgado* and *Morales-Izquierdo* both dealt with reinstated removal orders, which, pursuant to 8 U.S.C. § 1231(a)(5), bar "'any relief,' including adjustment of status." (*Id.* (quoting *Morales-Izquierdo*, 600 F.3d at 1082)). And he finds further support for it in *Torres-Tristan v. Holder*, 656 F.3d 653 (7th Cir. 2011), where the Seventh Circuit held that Section 1252(a)(5) did not apply to a plaintiff's challenge to the denial of a "U Visa," even though he was subject to an order of removal, because, under applicable regulations, the plaintiff "could be eligible for U Visa relief notwithstanding the removal order." *Id.* at 662 (citing 8 C.F.R. § 214.14(c)(1)(ii)). Construed in that way, Singh argues (Pl.'s Ltr. 2), *Delgado* does not call for dismissal of his case because he is an "arriving alien" and, under BIA precedent, "the existence of a final order of removal does *not* preclude the USCIS from granting adjustment of status to an arriving alien who is otherwise eligible for adjustment of status." *In re Yauri*, 25 I. & N. Dec. 103, 107 (BIA 2009).

The Court is unpersuaded. First and foremost, although creative, Singh's argument finds no support in the language of *Delgado* itself, which is — unlike out-of-Circuit cases — binding on this Court. Significantly, the Second Circuit's opinion nowhere suggests that its holding rests on the fact that Delgado was under a reinstated, as opposed to an initial, order of removal. It does mention, in a footnote providing context for the requests that USCIS had denied, that "[i]n order to apply for adjustment of status, a previously removed alien 'must request permission to reapply for entry' by filing Form I-212." *Delgado*, 643 F.3d at 54 n.1 (quoting 8 C.F.R.

§ 212.2(e)). But the *Delgado* Court did not even so much as cite the statute that makes a previously removed alien who has reentered the United States, as Delgado had, ineligible for "any relief." *See* 8 U.S.C. § 1231(a)(5). *Morales-Izquierdo*, by contrast, does include a passing reference to the statute, but only to underscore the distinction between "aliens who *lawfully* reside within the United States" and have applications for adjustment of status denied and the plaintiff, who was "not eligible for 'any relief.'" 600 F.3d at 1082 (emphasis added); *see also Delgado*, 643 F.3d. at 55 n.3 (noting the same distinction and citing *Ruiz v. Mukasey*, 552 F.3d 269 (2d Cir. 2009), for the proposition that Section 1252(a)(5) "does not preclude a district court from exercising jurisdiction over an action seeking review of the denial of an I-130 petition for classification of an alien as an immediate relative of a U.S. citizen because such a denial is unrelated to *any* removal action or proceeding" (emphasis added) (internal quotation marks and brackets omitted)). In other words, the critical distinction in *Delgado* (and *Morales-Izquierdo*) is between the existence and non-existence of an order of removal, not between an order of removal and a reinstated order of removal. *Compare* 8 U.S.C. § 1252(a)(5) (giving exclusive jurisdiction over a challenge to "an order of removal" to the courts of appeals), *with Morales-Izquierdo*, 600 F.3d at 1082 ("The Reinstatement Order . . . qualifies as an order of removal.").

Second, and in any event, the Seventh Circuit's decision in *Torres-Tristan* — a case about what administrative actions qualify as "final" orders of removal reviewable under 8 U.S.C. § 1252 — does not support Singh's argument (let alone "conclusively," as he suggests (Pl.'s Ltr. 2)). In that case, the plaintiff sought judicial review of the denial of an I-192 waiver of inadmissibility, which was necessary for him to obtain a "U Visa." 656 F.3d at 658. The plaintiff argued that such review was available, despite a regulation explicitly stating that there is "'no appeal of a decision to deny a waiver,'" because the waiver decision was inextricably linked

9

to a reinstated order of removal, with respect to which the Court plainly had jurisdiction. *Id.* (quoting 8 C.F.R. § 212.17(b)(3)).  Understandably, the Court of Appeals rejected that argument on the ground that it "would be an unprecedented expansion of [the Court's] very limited judicial review of the reinstatement." *Id.*  Cases allowing judicial review of actions underlying a removal order, the Court reasoned, "provide[] no guidance for denial of an unrelated visa petition and waiver application through a procedure entirely separate from and independent of the reinstatement of his removal order and not otherwise subject to review." *Id.* at 661.  Significantly, quoting prior Circuit precedent, the Court explicitly noted that the term "final order of removal" in Section 1252(a)(5) "includes 'not only the actual order of deportation, but all orders closely related to the deportation proceeding . . . and entered during the proceeding, such as an order denying voluntary departure or an adjustment of status.'" *Id.* at 658 (quoting *Carvajal-Munoz v. INS*, 743 F.2d 562, 566 (7th Cir. 1984)).  Here, of course, Singh does not challenge a "denial of a[] . . . visa petition and waiver application," *id.* at 661, but rather "an order denying . . . an adjustment of status," *id.* at 658.  Thus, far from supporting Singh, *Torres-Tristan* actually provides support for application of Section 1252(a)(5)'s jurisdictional bar.[3]

In short, the Court rejects Singh's efforts to limit the reach of *Delgado*'s holding, and concludes that *Delgado* compels dismissal of Singh's case for lack of subject-matter jurisdiction.[4]  Singh requests that this Court hold USCIS's decision with respect to his

---

[3]   Singh also invokes *Crippa v. Holder*, 585 F. App'x 581, 582 (9th Cir. 2014), an unpublished one-page memorandum opinion.  *Crippa* is distinguishable, as the plaintiff's application for a status adjustment in that case "was not denied because of the removal order." *Id.* at 582 n.1.  Here, by contrast, USCIS declined jurisdiction in light of the proceedings before the immigration judge in California — that is, the very proceedings in which the removal order had been entered.  In any event, the Ninth Circuit's short unpublished decision is not a basis for this Court to ignore binding Second Circuit precedent.

[4]   Even if Singh's proposed interpretation of *Delgado* were correct, it is far from clear that he himself would benefit from it.  The BIA decision upon which Singh relies provides that "the

10

application for adjustment of status "unlawful and set it aside, and remand this matter to USCIS to adjudicate this application." (Compl. 7). Although USCIS's exercising jurisdiction over Singh's application might not "per se prevent [his] removal," it is — no less than the challenge at issue in *Delgado* and the district court cases applying *Delgado* — "a necessary prerequisite to [his] ultimate goal of adjustment of status." *Delgado*, 643 F.3d at 55. In fact, the case for viewing Singh's attack on USCIS's decision as an "indirect challenge" to his order of removal is arguably stronger than the case for that conclusion in *Delgado*. Under applicable regulations, jurisdiction over applications for adjustments of status lies either with the USCIS or with an IJ, but never with both concurrently. *See* 8 C.F.R. § 245.2(a)(1) (USCIS); *id.* § 1245.2(a)(1) (IJ). Specifically, USCIS "has jurisdiction to adjudicate an application for adjustment of status . . . unless the immigration judge has jurisdiction." *Id.* § 245.2(a)(1). Thus, were this Court to rule that USCIS had to exercise jurisdiction over Singh's application, it would arguably be holding — at least by implication — that the IJ who entered the order of removal against him in California lacked jurisdiction to do so. In other words, the "substance of the relief" Singh seeks necessarily impugns the validity of the underlying order of removal and is thus "inextricably linked" to it within the meaning of *Delgado*. 643 F.3d at 55.

---

existence of a final order of removal does *not* preclude the USCIS from granting adjustment of status to an arriving alien *who is otherwise eligible for adjustment of status*." *In re Yauri*, 25 I. & N. Dec. at 107 (latter emphasis added). Here, Plaintiff seeks to adjust his status based upon a marriage that occurred after he was in removal proceedings — indeed, after he had been ordered removed. Under 8 C.F.R. § 245.1(c)(8), however, the "categories of aliens" who are "ineligible to apply for adjustment of status" include "any alien who seeks to adjust status based upon a marriage which occurred . . . while the alien was in . . . removal proceedings." Further, 8 C.F.R. § 212.5(e)(ii) states that "[a]n alien who is granted parole into the United States . . . for other than the specific purpose of applying for adjustment of status under section 245A of the Act" — as Singh was — "shall not be permitted to avail him or herself of the privilege of adjustment thereunder." Accordingly, Singh's order of removal arguably *does* bar the relief that he seeks in this case. So even on his interpretation of *Delgado*, the relief he seeks would be "inextricably linked" to his order of removal. (Pl.'s Ltr. at 2).

Notably, the Court's conclusion that Singh may not seek relief here is also consistent with "Congress's clear intent to consolidate review of challenges to orders of removal in the courts of appeals." *Id.* at 55. As the Second Circuit has noted, Congress enacted the REAL ID Act with the intent "to have all challenges to removal orders heard in a single forum." *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 124 (2d Cir. 2006) (internal quotation marks omitted). That is, a "primary effect of the Real ID Act . . . is to . . . limit all aliens to one bite of the apple . . . and thereby streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts . . . and the courts of appeal." *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 151 n.3 (2d Cir. 2006) (internal quotation marks omitted). Allowing Singh's challenge to proceed here would plainly undermine that purpose of the Act and give him a second bite at the apple, as he is already seeking review in the Ninth Circuit of the BIA's denial of his motion to reopen his deportation proceedings to allow him to apply for adjustment of status. It makes far more sense to consolidate all of Singh's challenges to his ultimate removal in the Ninth Circuit than to permit him to proceed separately in this Court.[5]

---

[5] Given the ongoing proceedings in the Ninth Circuit, there is no need to transfer this case in the interest of justice. *See* 28 U.S.C. § 1631 (providing that if a court finds it lacks jurisdiction over a civil action, including a petition for review, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed"); 8 U.S.C. § 1252(b)(2) (explaining that a "petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings"). In any event, a district court may transfer a petition for review of an order of removal to the court of appeals only if it was timely filed, which is not the case here because Singh filed this action well over a year after USCIS denied his motion for reconsideration. *See* 8 U.S.C. § 1252(b)(1) (requiring that a petition for review be filed "not later than 30 days after the date of the final order of removal"); *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 617-18 (2d Cir. 2007) (noting that the thirty-day deadline is "a strict jurisdictional prerequisite" (internal quotation marks omitted)).

## CONCLUSION

For the reasons discussed above, the Court concludes that it lacks subject-matter jurisdiction pursuant to Section 1252(a)(5) because Singh's challenge constitutes an indirect challenge to his order of removal. Accordingly, both parties' motions for summary judgment are DENIED, and the case is dismissed for lack of jurisdiction. The Clerk of Court is directed to terminate Docket Nos. 15 and 22, and to close the case.

SO ORDERED.

Date: March 30, 2016
      New York, New York

                                            JESSE M. FURMAN
                                            United States District Judge